IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HASAAN KALONJI DAVIS,

   Plaintiff,

   v.

LAWRENCE MANNING, M.D., et al.,

   Defendants.

Civil Action No. DKC-24-3606

**MEMORANDUM OPINION**

Pending in this civil rights case concerning medical care are a motion to dismiss filed on behalf of Defendant Dr. Bryan Klepper (ECF No. 30),[1] a motion to stay filed on behalf of Defendants Dr. Lawrence Manning; Dr. Yonas Sisay; Yvette Ledjo, NP; Emmanuel Esianor, PA; Lum Maximuangu, NP; and Chidi Oriaku, RN (ECF No. 27), and a motion to dismiss, or alternatively for summary judgment filed on behalf of YesCare Corp. (ECF No. 33). Self-represented Plaintiff Hasaan Kalonji Davis opposes the dispositive motions and requests appointment of counsel. ECF Nos. 40, 43, 45.[2] Defendants Dr. Bryan Klepper and YesCare Corp. filed replies. (ECF Nos. 41, 44 respectively). No hearing is deemed necessary as the issues have been fully briefed. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the motion to stay is denied, Defendant Dr. Bryan Klepper's motion to dismiss is granted as herein set forth, and YesCare Corp.'s motion is denied without prejudice. Counsel shall be appointed to represent Mr. Davis.

---

   [1] Defendant Klepper initially filed a Motion to Dismiss on June 3, 2026 (ECF No. 22) and later filed a "Line" seeking to withdraw that motion. ECF No. 32. The request to withdraw the June 3, 2026, Motion is granted.

   [2] Mr. Davis' Motion for Extension of Time (ECF No. 42) is granted nunc pro tunc.

## I.  BACKGROUND

A.  Mr. Davis' Allegations

Plaintiff Hasaan Kalonji Davis ("Mr. Davis"), formerly a Maryland state inmate, filed a civil rights complaint pursuant to 42 U.S.C. §1983 on December 12, 2024. ECF No. 1.[3] Mr. Davis alleges that he has been denied constitutionally adequate medical care and suffered medical neglect due to the delay and failure of Defendants to treat his torn pectoralis muscle properly. *Id.* He named as Defendants Dr. Lawrence Manning; Dr. Yonas Sisay; Yvette Ledjo, NP; Emmanuel Esianor, PA; Lum Maximuangu, NP; Chidi Oriaku, RN; YesCare, Inc.; Corizon Health, Inc.; Dr. Bryan Klepper; and Ermano Costabile.[4] *Id.* He seeks injunctive relief in the nature of medical care and compensatory damages. ECF No. 1 at 17, 19.

Mr. Davis explains that in December of 2020, while weightlifting, he dropped weights on himself, tearing his pectoralis muscle. ECF No. 1 at 6, 9. He alleges that medical care for his injury was denied and delayed. Specifically, Mr. Davis asserts that his medical providers refused to provide sufficient diagnostic testing, specialty consultations, pain management, and physical therapy until after much delay resulting in permanent damage and disability. ECF No. 1.

Mr. Davis states that PA Esianor misdiagnosed his injury and he was not seen by Dr. Sisay until February of 2021. Dr. Sisay concluded that Mr. Davis "suffered a likely disruption of the left pectoralis major muscle" and submitted an orthopedic consultation request but failed to note the need for surgery to reattach the torn ligaments and tendons and to repair the muscle. *Id*. at 1, 10.

---

[3] At the time, Plaintiff was incarcerated. In April 2025, Plaintiff filed a notice of change of address reflecting that he had been released. (ECF No. 18).

[4] The Clerk shall amend the docket to reflect the full and complete names of Defendants as Dr. Lawrence Manning; Dr. Yonas Sisay; Yvette Ledjo, NP; Emmanuel Esianor, PA; Lum Maximuangu, NP; Chidi Oriaku, RN; YesCare, Inc.; Corizon Health, Inc.; Dr. Bryan Klepper; and Ermano Costabile.

On April 9, 2021, Dr. Manning evaluated Mr. Davis and diagnosed him as suffering from "left chest contusion r/o tear of pectoralis tendon insertion left chest wall mass r/o hematoma." *Id*. at 10.  Dr. Manning recommended that Mr. Davis receive physical therapy and an ultrasound and that he return for follow up in 4-5 weeks; however, the follow up did not occur and the order for physical therapy and ultrasound were not submitted until over four months later on August 19, 2021. *Id*. at 9, 10.  Mr. Davis did not receive the ultrasound until eight months after it was initially ordered. *Id*. at 11.  Mr. Davis asserts that Dr. Manning "took no measures to address the need for repair of the torn ligaments, tendons, and muscles." *Id*. at 10.

NP Lum Maximuangu examined Mr. Davis on a number of occasions but failed to address adequately his need for additional medical treatment, including further diagnostic testing to determine the extent of damage to the muscle and the need for surgery. *Id*. at 11.  Dr. Sisay, Emmanuel Esianor P.A., and Yvette Ledjo, each regularly evaluated Mr. Davis after he received the ultrasound but made no additional recommendations regarding his care. *Id*.  Additionally, Mr. Davis states that he was not provided adequate pain relief. *Id*.

Utilization Management ("UM") repeatedly refused requests for Mr. Davis to be seen by an orthopedic surgeon in favor of additional physical therapy. *Id*.  In support of this claim, Mr. Davis specifies that Dr. Bryan Klepper did not provide the results of his diagnostic tests for UM to review in order to approve his referral to an orthopedic specialist. *Id*.

Ermano Costabile[5] was to provide Mr. Davis physical therapy but when he saw Mr. Davis on October 6, 2021, he only demonstrated techniques for home exercises. *Id*.

On January 3, 2022, an MRI was conducted and found "Impression: High Grade to complete Chronic tear of the distal pectoralis major tendon."  ECF No. 1 at 12.  Mr. Davis

---

[5]   Ermano Costabile has not been served with the complaint.

submitted sick call slips requesting the results of the MRI but was not seen by Dr. Sisay for over four months, until May 24, 2022. *Id.* at 12. At that time, medical providers inquired as to Mr. Davis' ability to execute his activities of daily living; but they did not inquire about his religious practices, and he states that as a practicing Muslim he must only use his left hand for toilet activities. *Id.* In June and September 2022, Mr. Davis filed sick calls slips requesting an evaluation by an orthopedic specialist. *Id.* at 12.

On July 1, 2022, YesCare became the medical contractor for the Division of Corrections, taking over the provision of medical care from Corizon. ECF No. 1 at 12.

In October or November of 2022, a request for an orthopedic consultation was made, but it "was denied upon the assumption the injury was too old." *Id.* at 14. Mr. Davis asserts that the delay in his treatment resulted in his distal pectoralis major tendon being "chronically medically retracted by 9 cm." *Id.* at 9.

Mr. Davis asserts that Defendants were deliberately indifferent to his serious medical needs when, for years, he was deprived of treatment and denied access to qualified experts who could determine the nature and extent of his injuries and determine what medical treatment was required. ECF No. 1 at 15. He claims that Defendants were deliberately indifferent to his serious medical needs when they failed to make him available to receive care from experts and overruled decisions by experts that he required surgery. *Id.* He asserts that the deliberate indifference was also due to the "policy of the corporation 'private utilization' which denies medical treatment for pecuniary reasons." *Id.* at 17.

In his opposition to the motions to dismiss, Mr. Davis reiterates his claims and further argues that YesCare exhibited a pattern of neglect in their months of unfulfilled diagnostic orders. ECF No. 43 at 4. He notes that an issue to be determined is whether the nurse practitioners and YesCare were deliberately indifferent to his medical needs when they only provided him Robaxin,

4

a muscle relaxer, to treat his pain. *Id*. at 5. He contends that the individually named Defendants "passed the buck" by referring him to other providers and not following up on filed consultation and diagnostic test requests. *Id*. In Mr. Davis' view, "[t]he system failed to implement a comprehensive treatment to the known injury." *Id*. at 6. He points to the delays in treatment leading to his permanent injury. *Id*. Additionally, Mr. Davis argues that using activities of daily living as the basis for treatment amounted to a rationing of resources rather than "following medical necessity." *Id*.

B.  Defendants' Motions

Defendant Dr. Bryan Klepper moves to dismiss the complaint, asserting that Mr. Davis' complaint is one of negligence and Mr. Davis failed to comply with state conditions precedent before bringing a medical malpractice/negligence claim. ECF No. 30. YesCare Corp. moves for summary judgment or dismissal, arguing that Mr. Davis fails to state a claim against Yescare and it is otherwise entitled to summary judgment. ECF No. 33.

In a declaration accompanying the motion to dismiss or for summary judgment, filed by YesCare Corp., Dr. Sisay explains that he was employed formerly by Corizon Health and YesCare Corp. at Maryland Correctional Institution-Jessup. ECF No. 33-2, ¶ 2 (Sisay Decl.). On August 1, 2024, Centurion became the contracted health care provider for DPSCS and Dr. Sisay is currently employed by Centurion. *Id.*

Dr. Sisay explains that insurance companies and prison health contractors have a Utilization Management ("UM") process to ensure appropriate use of resources. ECF No. 33-2, ¶ 5. YesCare's UM department reviews consultation requests for certain diagnostic testing, specialist visits, and surgery. *Id*. After an onsite provider submits a consultation request, a UM Medical Doctor ("UMMD") reviews the request, along with any medical records submitted by the provider, to determine whether medical necessity has been demonstrated for the requested

5

procedure or visit. *Id.* The UMMD can approve the request, ask for additional information, or return an Alternative Treatment Plan ("ATP") suggesting a different treatment. *Id.* The decision of the UMMD is returned to the site where the requesting provider can either accept or appeal it. *Id.* He avers that YesCare does not have a policy of denying medical care to insure cost saving. *Id*.

Dr. Sisay further explains that Mr. Davis suffered a pectoralis major tendon tear in December 2020. ECF No. 33-2, ¶ 6. The standard of care for such an injury can be surgical or non-surgical based on whether the tear is partial or full and management depends on circumstances including, among other things, the severity of the tear and patient's activity level. *Id*. Non-surgical treatment includes rest, ice and physical therapy and is often suitable for a partial tear and individuals who are elderly or less active. *Id*. Surgical repair is typically recommended for complete or high-grade tears particularly in younger or active patients such as Mr. Davis. *Id*. Surgery is ideally performed within six weeks of the injury with delay of surgery making future surgery more challenging due to the shortening of tendons and scar tissue having developed. *Id*.

Dr. Sisay explains that Mr. Davis's initial care was impacted by the COVID-19 pandemic and that he did not see Mr. Davis until over seven weeks after the injury and generated an orthopedic consultation request at that time. ECF No. 33- 2, ¶ 7. Mr. Davis was quarantined for three weeks after that visit due to an exposure to COVID and when he was seen by Dr. Manning on April 9, 2021, it was over 16 weeks after his injury, and he then had a chronic tendon injury. *Id*.

Dr. Sisay states that he did not ignore Mr. Davis' needs, the initial phase of his treatment was affected by the COVID-19 pandemic, and there was no suspicion after his injury that he had a high-grade tear until that was demonstrated on an MRI. ECF No. 33-2, ¶ 41. In Dr. Sisay's

view, Mr. Davis saw all necessary specialists, had all necessary investigations of his injury, and his care was repeatedly discussed for continuing care. *Id*.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

When the moving party styles its motion as a motion to dismiss or, in the alternative, motion for summary judgment, as Defendant YesCare has done, and attaches additional materials to the motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" I*d*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in

7

original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts*., 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### III. ANALYSIS

A.   Motion to Stay

On June 23, 2025, Defendants Dr. Lawrence Manning; Dr. Yonas Sisay; Yvette Ledjo; NP; Emmanuel Esianor, PA; Lum Maximuangu, NP; and Chidi Oriaku, RN moved this court to enter an order staying this action until the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division issues an order deciding the Omnibus Motion to Enjoin filed by YesCare in *In Re Tehum Care Services, Inc.* (f/k/a Corizon Health Inc.), Case No. 23-90086 (CML) (Bankr. S.D. Tex. 2023). ECF No. 27 at 1.  The omnibus motion sought an order from the Bankruptcy court clarifying that "actions brought against the Debtor's former employees are enjoined consistent with the administration and intended consummation [with] the now-effective Bankruptcy Plan, including the existing injunctions and releases therein." *Id*.  The Debtor referenced is Tehum Care Services, formerly Corizon Health. *Id.* at 2. The motion states that "Defendants are former employees of the Debtor" and former employees are included as "Released Parties" under the Plan. *Id*.  This case was stayed as to Corizon Health after a suggestion of bankruptcy was filed.  ECF No. 24.

 Lawrence Manning; Dr. Yonas Sisay; Yvette Ledjo, NP; Emmanuel Esianor, PA; Lum Maximuangu, NP; and Chidi Oriaku, RN were directed to supplement the record with evidence of

8

the nature and type of notice Mr. Davis received regarding the bankruptcy proceedings before the court would consider the Motion to Stay.  *See* Docket entry dated June 23, 2025.  To date, Defendants have failed to comply with the court's order as no response has been received.  On August 7, 2025, the Bankruptcy court found that Mr. Davis was not served an Opt-Out Release Form and he was therefore not bound by the consensual third-party release in the Bankruptcy Plan regarding Tehum Care Services, Inc.  *See In re Tehum Care Services, Inc.*, Case No. 23-900086 (CML) (Bankr. S.D. Tex. 2023) Order dated August 7, 2025.

The motion to stay is denied due to Defendants' failure to respond to the court's order and the finding of the Bankruptcy court that Mr. Davis was not served with the Opt-Out Release Form.

B.     Motion to Appoint Counsel

In his Motion for Appointment of Counsel (ECF No. 45) Mr. Davis argues, among other things, that "[t]his case requires extensive documentary discovery, depositions or access to witnesses Plaintiff cannot get to." *Id*. at 2.  He argues that the medical issues are complex and require expert testimony to explain the injury,  the permanency of the damages, and other medical factors. *Id*.  He notes that as a pro se litigant he is unable to address these issues adequately.  *Id*.

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[6] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).  There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances."  *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but

---

[6] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

9

lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) ("…a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)).

As discussed, the complaint concerns Mr. Davis' claim that he was denied adequate medical care over a period of several years by two health care contractors. ECF No. 1. Mr. Davis presents a colorable claim, and the court must consider whether, given "the claim's objective complexity and the plaintiff's subjective abilities," he "lacks the capacity to present it." *Jenkins*, 109 F.4th at 247.  Informing this review, the court is mindful that summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  A party opposing the conversion of a motion to dismiss into one for summary judgment must, ordinarily, submit a Rule 56(d) affidavit setting forth the reasons for opposition. *Evans v. Tech Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996).  Even without a Rule 56(d) affidavit, the court may consider whether the nonmoving party has "adequately informed the [] court that the motion [for summary judgment] is [premature] and more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).  The Fourth Circuit has emphasized that discovery is "broadly favored" in advance of reaching summary

judgment and district courts are to afford pro se plaintiffs leniency in regard to the requirements of Rule 56(d). *Farabee v. Gardella*, 131 F.4th 185, 193-95 (4th Cir. 2025). Nevertheless, a plaintiff "cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 3d 331, 342 (D. Md. 2011).

While Mr. Davis has not formally requested discovery, in his opposition response and in his request for appointment of counsel, he argues, among other things, that because he is proceeding pro se he has not had an opportunity to consult with a medical expert or to evaluate properly the medical evidence including deposing witnesses. ECF No. 45. According to Mr. Davis, there are genuine disputes of material fact regarding defendants' deliberate indifference to his serious medical needs.

Defendants each had a role in the diagnosis and treatment of Mr. Davis' injury as well as in following up on consultation requests and the ATP approval process. It is not clear what, if any, additional actions any of the named Defendants should have taken in reviewing Mr. Davis' medical records, following up on consultation requests, or in reviewing the multiple requests for specialty care. Further, while the court has been furnished with some information concerning the process for approving medical care, it has not been provided specific information concerning Mr. Davis' care such as how and why the UM did not receive timely information regarding Mr. Davis' trial of physical therapy or home exercises. Nor, has the court been provided adequate information regarding the initial delay in assessing Mr. Davis' injury. It is also not clear what, if any, responsibility individual Defendants may have had to gather additional information regarding Mr. Davis' treatment before determining that a conservative plan of treatment as recommended by the ATP had not been fully tried. While Defendant YesCare contends that Mr. Davis has failed to provide sufficient information to support a policy or practice claim against them, Mr. Davis is entitled to an opportunity to explore these topics through discovery and with the assistance of

counsel. Discovery will allow him to develop further his claim that YesCare had a policy and practice to delay and deny treatment in order to save costs. Mr. Davis' motion to appoint counsel is granted and YesCare Corp.'s dispositive motion is denied without prejudice.

C.     Defendant Dr. Bryan Klepper's Motion to Dismiss

Defendant Dr. Bryan Klepper argues that Mr. Davis has failed to satisfy the conditions precedent for filing a state law medical malpractice claim and therefore he is entitled to dismissal of this claim.[7] Medical malpractice claims must first be presented to the Maryland Health Claims Arbitration Board before a complaint may be filed in court if the plaintiff is seeking more than $30,000 in damages. *See* Md. Code Ann., Cts & Jud. Proc. § 3-2A-02 et seq.; *Davis v. Frostburg Facility Operation, LLC*, 177 A.3d 709, 715 (Md. 2018). Nothing in the record demonstrates that Mr. Davis complied with this prerequisite. Accordingly, the state law medical malpractice claim asserted against Defendant Dr. Bryan Klepper is dismissed without prejudice. However, Defendant Dr. Bryan Klepper fails to address Mr. Davis' federal constitutional claims (merely claiming one is not pled) and as such those claims shall proceed.

## IV.  CONCLUSION

For the foregoing reasons, the motion to stay is denied, Defendant Dr. Bryan Klepper's motion to dismiss is granted as to the medical malpractice claim asserted against him, and denied as to Mr. Davis' constitutional claims, and YesCare Corp.'s dispositive motion is denied without prejudice. Counsel shall be appointed for Mr. Davis. A separate Order follows.

February 9, 2026                                                    /s/
Date                                                                      DEBORAH K. CHASANOW
                                                                                 United States District Judge

---

[7] Mr. Davis disclaimed any intention to file such a claim in his opposition. (ECF No. 40). Dr. Bryan Klepper erroneously asserts that the issue presents a question of subject matter jurisdiction. Instead, it raises a question of failure to state a claim.